# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADVANCED WAREHOUSE SYSTEMS, INC., | : | |
| Plaintiff | : | No. 1:18-cv-02364 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| AMERICAN ASH RECYCLING CORP. OF PENNSYLVANIA, | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is Plaintiff Advanced Warehouse Systems, Inc. ("Plaintiff")'s motion for default judgment against Defendant American Ash Recycling Corporation of Pennsylvania ("Defendant"). (Doc. No. 11.) For the reasons that follow, the Court will grant the motion and direct the entry of default judgment in favor of Plaintiff and against Defendant.

## I.     BACKGROUND

Plaintiff initiated the above-captioned action by filing a complaint in this Court against Defendant on December 13, 2018 (Doc. No. 1) in connection with a dispute concerning a Sublease (the "Sublease") between the parties as to a commercial property located at 610 Memory Lane in Springettsbury Township, York County, Pennsylvania (the "Leased Premises"). (Doc. No. 1 ¶ 1.)[1] In the complaint, Plaintiff seeks "damages for unpaid rent, repair costs, interest, attorneys' fees, and costs" from Defendant, as a result of Defendant's alleged "fail[ure] to honor its contractual obligations to pay [Plaintiff] sums due and owing under the Sublease and

---

[1] As noted in the complaint, Plaintiff "is a Massachusetts corporation with a principal place of business located at 101 A Constitution Boulevard, Franklin, Massachusetts[,]" and Defendant "is a Florida corporation with . . . a principal place of business located at 6622 Southpoint Drive, Suite 310, Jacksonville, Florida" and, therefore, this Court has subject matter jurisdiction over the instant case on the basis of federal diversity jurisdiction. (Doc. No. 1 ¶¶ 4-6, 10.)

the First Amendment [to the Sublease,] which total $862,509.00 together with interest, attorneys' fees, and costs[,]" despite Defendant having received several requests for payment. (Id. ¶¶ 2-3.)

Specifically, Plaintiff alleges that the parties executed the Sublease on May 28, 2014, and the expiration date for the Sublease was three years following that date. (Id. ¶¶ 12-13.) On August 31, 2017, the parties executed the First Amendment to the Sublease, which extended the term of the Sublease to April 30, 2018 and "established monthly Sublease payments in the amount of $32,587.68 from September 1, 2017 through December 31, 2017 and $32,587.68 for each month thereafter." (Id. ¶¶ 14-15.) In addition, the First Amendment "authorized [Defendant] to occupy the Leased Premises until May 31, 2018 for the purpose of removing its personal property and returning the Leased Premises to the condition required by the Sublease provided that [Defendant] ceased all business operations at the Leased Premises by April 30, 2018[,]" and "Section 4 of the First Amendment provided that failure to cease all business operations at the Leased Premises by April 30, 2018, and to vacate and restore the Leased Premises by May 31, 2018 would result in a restoration of [h]oldover rent for the extended term in the amount of $147,252.51, and [h]oldover rent in the amount of $65,715.75 per month for each month thereafter." (Id. ¶¶ 16-17.) The Sublease also imposed additional requirements on Defendant, including a requirement that Defendant pay real estate taxes and operating expenses, as well as the requirement that Defendant maintain the Leased Premises "in good order, repair and condition, and in conformance with all Legal Requirements." (Id. ¶¶ 18-19.) Further, Section 7.9 of the Sublease specifically stated as follows:

> The foregoing obligation shall include, without limitation, restoring the floors of the [Leased] Premises to the condition they are in as of the date hereof and removing any dust or soot from the walls and ceiling of the [Leased] Premises resulting from [Defendants]'s operations. In the event [Defendant] fails so to remove any such alterations, additions[,] and improvements or the Personal Property or fails to repair any such damage to the [Leased] Premises, [Plaintiff]

may do so and collect from [Defendant] the cost of such removal and repair in accordance with Section 7.8 hereof.

(Id. ¶ 19) (first, second, and fifth alterations in original). Finally, Section 7.8 of the Sublease requires Defendant to pay for Plaintiff's "expenses, including reasonable attorneys' fees, incurred in enforcing any obligation of [Defendant] under this Sublease or in curing any default by [Defendant] under this Sublease." (Id. ¶ 21.)

According to Plaintiff, despite having ceased operations at the Leased Premises in April of 2018, Defendant "continued to ship ash from the Leased Premises until approximately May 15, 2018" and "also failed to timely repair and restore the Leased Premises as required by the Sublease and the First Amendment." (Id. ¶¶ 22-23.) Plaintiff alleges that Defendant's "operations caused substantial damage to the Leased Premises such as ash covering the ceiling, walls, and fixtures and destruction of several sections of the concrete floor[,] which made the floor unusable for ordinary warehousing operations" and that Defendant "left several of the building systems in non-functioning condition including, but not limited to, electrical, lighting, alarm, septic, and several doors and locks." (Id. ¶¶ 24-25.) Plaintiff adds that on June 28, 2018, it provided Defendant with written notice that Defendant "was in default of its obligations under the Sublease for failing to timely vacate the Leased Premises and failing to make certain payments" and that Defendant failed to make any payments in response to this notice. (Id. ¶¶ 26-27.) Plaintiff subsequently hired various contractors to make repairs as to the Leased Premises in order to restore the Leased Premises to the conditions required under the Sublease, which totaled $605,949. (Id. ¶¶ 28-29.) Further, Defendant "was required to pay the restored [h]oldover rent in the amount of $147,252.51, [h]oldover rent for June, July, and August in the amount of $65,715.36 per month, and electrical and gas utilities for additional rent in the amount of $356,560.51, less a security deposit credit in the amount of $100,000.00." (Id. ¶ 30.) According

3

to Plaintiff, therefore, the total amount owed to it by Defendant is $862,509.00, together with interest, attorneys' fees, and costs[,]" and Defendant has failed to make any such payment. (Id. ¶¶ 31-32.)[2] In its complaint, Plaintiff asserts one claim for breach of contract under Pennsylvania law against Defendant as a result of these events. (Id. at 7.)

Subsequent to initiating the above-captioned action in December of 2018, Plaintiff filed with the Clerk of Court a request for the entry of default as to Defendant on February 21, 2019 (Doc. No. 6), which was granted on February 22, 2019 (Doc. No. 8). Plaintiff then filed the instant motion for default judgment on May 23, 2019 (Doc. No. 11), along with a brief in support thereof (Doc. No. 12). Given that Defendant has not participated in the above-captioned action, no response to the motion has been filed. Accordingly, Plaintiff's motion is ripe for disposition.

## II. LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure. An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b). See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2). Entry of default does not entitle a claimant to default judgment as a matter of right. See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010). Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the

---

[2] Plaintiff's motion for default judgment clarifies that the amount sought is $862,509.51. (Doc. No. 11 at 3.)

sound discretion of the district court. See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)). Yet, if the defendant has been properly served but fails to appear, plead, or defend an action, a court may "enter a default judgment based solely on the fact that the default occurred," without considering the Chamberlain factors. See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry." Martin v. Nat'l Check Recovery Servs., LLC, No. 12-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016). Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action." See Wright, et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) ("Consequently, before granting a default judgment, the Court must . . . ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." (citations omitted)). In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they were established by proof." See E. Elec. Corp. of N.J. v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009) (citation omitted). While the Court must accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's

5

factual allegations or legal conclusions relating to the amount of damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III. DISCUSSION

Having reviewed the record, including Plaintiff's complaint, motion, supporting brief, exhibits, and accompanying affidavits, the Court finds that entry of default judgment against Defendant and in favor of Plaintiff is appropriate. As an initial matter, the Court observes that Plaintiff's unchallenged allegations in the complaint, taken as true, state a legitimate cause of action for breach of contract because Plaintiff has shown "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." See CoreStates Bank, N.A. v. Cotillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing Gen. State Auth. v. Coleman Cable & Wire Co., 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)). In addition, Plaintiff has offered support for its claim of a sum certain of $862,509.51 in the relevant documents accompanying its complaint and motion for default judgment.[3]

Furthermore, the Court finds that the three Chamberlain factors weigh in favor of entering default judgment against Defendant. First, Plaintiff will be prejudiced if the Court declines to enter default judgment because Plaintiff is unable to proceed with the action due to Defendant's failure to respond and has no other means of recovering against Defendant. See Broad. Music, Inc. v. Kujo Long, LLC, No. 14-449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) ("Plaintiffs will be prejudiced . . . by their current inability to proceed with their action due to [d]efendants' failure to defend."). Second, Defendant has not asserted a meritorious defense

---

[3] While Plaintiff's complaint appears to request interest, as well as attorney's fees and costs, in addition to damages (Doc. No. 1 at 7), Plaintiff appears to have abandoned this request in connection with the instant motion, for Plaintiff's motion and supporting brief state that Plaintiff requests a default judgment in the amount of $862,509.51 (Doc. No. 11 at 3).

6

to Plaintiff's claim through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to the instant motion. Consequently, the Court is unable to conclude from Defendant's silence that Defendant has a viable, litigable defense. See Laborers Local Union 158 v. Fred Shaffer Concrete, No.10-1524, 2011 WL 1397107, at *2 (M.D. Pa. Apr. 13, 2011). Third, the Court cannot discern from the record any excuse or justification for Defendant's default apart from Defendant's own culpability. Indeed, Defendant has failed to enter an appearance or file a timely answer to the complaint and has offered no reasons for its failure to do so. "A defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful." Innovative Office Prods., Inc. v. Amazon.com, Inc., No. 10–4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012). In the absence of any excuse or justification for Defendant's failure to participate in this litigation, the Court must conclude that the delay is the result of Defendant's culpable conduct. See Laborers Local Union 158, 2011 WL 1397107, at *2. Accordingly, the Court is satisfied that the Chamberlain factors counsel in favor of entering default judgment in favor of Plaintiff, and thus, will grant Plaintiff's motion for default judgment.

**IV. CONCLUSION**

Based on the foregoing, the Court will grant Plaintiff's motion for default judgment. (Doc. No. 11.) An appropriate Order follows.